IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

CASE NO.: 14-15393-F
_____

PAUL ABREU
Appellant,

vs.

ALBERTO DOMINGUEZ
Appellee.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA, CASE NO.: 1:13-CV-21766-JLK
_____

**INITIAL BRIEF OF APPELLANT
PAUL ABREU**

OSCAR E. MARRERO, ESQUIRE
Florida Bar No. 372714
LOURDES ESPINO WYDLER, ESQUIRE
Florida Bar No. 719811

MARRERO & WYDLER
Douglas Centre, PH-4
2600 Douglas Road
Coral Gables, FL 33134
Telephone: (305) 446-5528

**ATTORNEYS FOR APPELLANT
PAUL ABREU**

## <u>APPELLANT'S CERTIFICATE OF INTERESTED PERSONS</u>

<u>PAUL ABREU V. ALBERTO DOMINGUEZ</u>

CASE NO.:  14-15393-F

Appellant, PAUL ABREU, by and through undersigned counsel, pursuant to the Eleventh Circuit Rule 26.1-1 states the following is an alphabetical list of the trial judge, attorneys, persons, firms, partnerships, and corporations with any known interest in the outcome of this appeal:

Abreu, Paul – Appellant/Defendant

Chavez & De Leon, P.A. – Counsel for Appellee Dominguez

City of Sweetwater - Defendant

De Leon, John – Counsel for Appellee Dominguez

Dominguez, Alberto – Appellee/Plaintiff

Greenstein, Alan – Counsel for Appellee Dominguez

Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A. – Counsel for City of Sweetwater, Defendant

King, James L. – United States Senior Judge, Southern District of Florida

Levy, Jay M. – Counsel for Appellee Dominguez

Marrero, Oscar E. – Counsel for Appellant Abreu

Marrero & Wydler – Counsel for Appelleant Abreu

Piper, Michael  – Counsel for City of Sweetwater, Defendant

Stearns, Christopher – Counsel for City of Sweetwater, Defendant

## PAUL ABREU V. ALBERTO DOMINGUEZ
### CASE NO.: 14-15393-F

Torres, Edwin – United States Magistrate Judge, Southern District of Florida

Wydler, Lourdes E. – Counsel for Appellant Abreu

Dated: __3/11/15__

Oscar E. Marrero, Esq.
Lourdes Espino Wydler, Esq.

C-2 of 2

## **INTRODUCTION**

In his Initial Brief, Appellant, Paul Abreu, will be referred to as "Abreu" or "Officer Abreu". The Appellee, Alberto Dominguez, will be referred to as "Plaintiff".

References to the Record will be made in accordance to 11th Cir. R. 28-5 and Fed. R. App. P. 28(e).  Because no record transcript was ordered in this case, references to the record shall be to Southern District docket entry number and page number: (D.E. #, pg.). References to a docket entry number that contains multiple transcript excerpts as attachments shall be cited as: (DE #, Attach., pg.). A document not assigned a docket entry number will be referred to by its title.

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant, PAUL ABREU, respectfully requests oral argument because this case involves an important constitutional issue based on qualified immunity for law enforcement officers. 11th Cir. R. 28-1(c); 11th Cir. R. 34-3(c).

## <u>TABLE OF CONTENTS</u>

APPELLANT'S CERTIFICATE OF INTERESTED PERSONS ...........................C-1

INTRODUCTION.................................................................................................. i

STATEMENT REGARDING ORAL ARGUMENT .................................................. ii

TABLE OF CONTENTS................................................................................... iii

TABLE OF CITATIONS ................................................................................... v

STATEMENT OF JURISDICTION ............................................................. viii

STATEMENT OF THE ISSUES ......................................................................1

STATEMENT OF THE CASE ..........................................................................2

   *I.   Course of Proceedings and Disposition in the District Court* ..........................2

   *II.  Statement of the Facts* ..........................................................................3

   *III. Standard of Review* ..............................................................................5

SUMMARY OF THE ARGUMENT ................................................................6

ARGUMENT .....................................................................................................7

I.   THE DISTRICT COURT ERRED IN DENYING SUMMARY JUDGMENT BECAUSE ABREU DID NOT VIOLATE A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT ......................................................7

   *A.   No Constitutional Violation Occurred Because the Force Used was De minimis and Reasonable Under the Circumstances* ................................................9

   *B.   The Law Was Not Clearly Established to Provide Fair Warning That Abreu's Conduct Amounts to a Fourth Amendment Violation Under the Circumstances* ..............................................................................................15

CONCLUSION....................................................................................................19

CERTIFICATE OF COMPLIANCE................................................................................20

CERTIFICATE OF SERVICE...................................................................................21

# **TABLE OF CITATIONS**

**Cases**                                                                              **Page**

*Adkins v. Christie*, 488 F.3d 1324 (11th Cir. 2007)......................................... viii, 5

*Anderson v. Creighton*, 483 U.S. 635 (1987) ...................................................7, 8, 15

*Barts v. Joyner*, 865 F.2d 1187 (11th Cir. 1989)...............................................*passim*

*Blandin v. County Of Charlotte*, 2010 WL 258808 (M.D. Fla. 2010) .............17, 18

*\*Buckley v. Haddock*, 292 Fed. Appx. 791 (11th Cir. 2008)...........................*passim*

*Cook v. Gwinnett County Sch. Dist.*, 414 F.3d 1313 (11th Cir. 2005) .............. viii, 5

*Crutcher v. Athens Police Dept.*, 2014 WL 5521944 (N.D. Ala. 2014)............16, 18

*Dartland v. Metropolitan Dade County*, 866 F.2d 1321 (11th Cir. 1989) ....8, 16, 19

*Durruthy v. Pastor*, 351 F.3d 1080 (11th Cir. 2003)........................................10, 11

*Gold v. City of Miami*, 121 F.3d 1442 (11th Cir. 1997). .........................................11

*Graham v. Connor*, 490 U.S. 386 (1989) ...........................................................9, 10

*Grant v. Lucas*, 2009 WL 3857441 (M.D. Ala. 2009) ......................................16, 18

*Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295 (11th Cir. 2006)........................ viii

*Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008)....................................9, 17, 18

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982).......................................................*passim*

*Hope v. Pelzer*, 536 U.S. 730 (2002) ......................................................................19

*\*J.B. ex rel. Brown v. Amerson*, 519 Fed. Appx. 613 (11th Cir. 2013)...........*passim*

*\*Jones v. City of Dothan, Ala.*, 121 F.3d 1456 (11th Cir. 1997).....................*passim*

*Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002) ........................................................7

*McCall v. Crosthwait*, 336 Fed. Appx. 871 (11th Cir. 2009) ..........................*passim*

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) .............................................................. viii

*Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000) ....................................................10

*Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993) .....................*passim*

*Saucier v. Katz*, 533 U.S. 194 (2001) .......................................................................8

*Saunders v. Duke*, 766 F.3d 1262 (11th Cir. 2014) ......................................9, 17, 18

*Slicker v. Jackson*, 215 F.3d 1225 (11th Cir. 2000) ............................................9, 18

*Smith v. City of Atlanta*, 2009 WL 2589633 (N.D. Ga. 2009) ...................16, 17, 18

*Sullivan v. City of Pembroke Pines*, 161 Fed. Appx. 906 (11th Cir. 2006) .............17

*Valdes v. Crosby*, 450 F.3d 1231 (11th Cir. 2006) ............................................ viii, 5

*Vilceus v. City of W. Palm Beach*, 2009 WL 2242604 (S.D. Fla. 2009) ...........16, 18

*Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002) ......................................*passim*

*Whittington v. Town of Surfside*, 490 F. Supp. 2d 1239 (S.D. Fla. 2007) .........16, 18

*William v. Loughnan*, 261 F.3d 1178 (11th Cir. 2001) ...........................................10

*Zivojinovich v. Barner*, 525 F.3d 1059 (11th Cir. 2008) ...............................*passim*

**<u>Statutes</u>**

28 U.S.C. § 1291 ..................................................................................................... viii

28 U.S.C. § 1331 ..................................................................................................... viii

42 U.S.C. § 1983 ................................................................................................. viii, 2

Fla. Stat. § 843.02 ...................................................................................17

**<u>Rules</u>**

11th Cir. R. 26.1-1 ...............................................................................C-1

11th Cir. R. 28-1 ................................................................................. ii

11th Cir. R. 28-5 ....................................................................................i

11th Cir. R. 34-3 ................................................................................. ii

Fed. R. App. P. 28 ..................................................................................i

Fed. R. App. P. 32 ...............................................................................20

## STATEMENT OF JURISDICTION

This action was brought pursuant to 28 U.S.C. §1331 and 42 U.S.C. §1983. The Court has jurisdiction pursuant to 28 U.S.C. § 1291 to review the Order Denying Defendant Paul Abreu's Motion for Summary Judgment from the United States District Court for the Southern District of Florida. "A district court's order denying a defense of qualified immunity is an appealable final decision within the meaning of 28 U.S.C. §1291 to the extent that it turns on a question of law." *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006); *see also Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806 (1985). Furthermore, this Court has jurisdiction to review qualified immunity decisions that turn on mixed questions of law and fact. *Adkins v. Christie*, 488 F.3d 1324, 1327 (11th Cir. 2007); *see also Valdes v. Crosby*, 450 F.3d 1231, 1235 (11th Cir. 2006); *Cook v. Gwinnett County Sch. Dist.*, 414 F.3d 1313, 1315 (11th Cir. 2005) ("[w]hen an interlocutory appeal raises both sufficiency of the evidence and clearly established law issues… [this Court has] jurisdiction to entertain both issues").

The District Court Order denying summary judgment was entered on October 31, 2014. (D.E. #48). The Appellant, PAUL ABREU, timely filed a Notice of Appeal on December 1, 2014. (D.E. #50).

## <u>STATEMENT OF THE ISSUES</u>

I.    Whether the district court erred in denying qualified immunity to Officer Abreu where the force used was *de minimis* and the law did not clearly establish that a reasonable officer under the circumstances would believe his actions to be unconstitutional.

## **STATEMENT OF THE CASE**

I.    *Course of Proceedings and Disposition in the District Court*

Plaintiff's Complaint was initially filed in Florida state court on April 19, 2013. The City of Sweetwater subsequently removed the case to the United States District Court for the Southern District of Florida on May 16, 2013. (D.E. # 1). The Plaintiff subsequently filed two amended complaints in response to arguments raised by the City of Sweetwater and Officer Abreu on motions to dismiss. (*See* D.E. ## 6, 15). The Second Amended Complaint alleged two causes of action against Officer Abreu – one for false arrest and one for excessive force – pursuant to 42 U.S.C. § 1983. (*See* D.E. ## 6, 15). Officer Abreu moved to dismiss the false arrest claim on the grounds that the arrest alleged in the Second Amended Complaint resulted in Plaintiff's conviction for criminal mischief, thus barring a claim of false arrest. (D.E. # 16). The Magistrate Judge issued a Report and Recommendation to dismiss the false arrest claim, which was adopted by the District Court Judge on April 17, 2014. (D.E. ## 23, 26).

Abreu's appeal to this Court involves the District Court's denial of his Motion for Summary Judgment asserting qualified immunity as a defense to Plaintiff's excessive force claim. The Plaintiff's false arrest claim was dismissed as the arrest was clearly supported by probable cause based on Plaintiff's subsequent criminal mischief conviction. (D.E. #26). The District Court denied Abreu's

2

Motion for Summary Judgment on the excessive force claim on October 31, 2014.

(D.E. #48).

## II.    *Statement of the Facts*

This appeal arises out of a civil rights action brought by the Plaintiff/Appellee, Alberto Dominguez, against the Defendant/Appellant, Paul Abreu. The Plaintiff alleges that Abreu used excessive force against him following a lawful arrest. (D.E. #26).

Officer Abreu responded to a domestic disturbance dispatch on the evening of April 17, 2010. (D.E. #32, Attach. 2, pg. 2). Upon arriving at the scene of the disturbance, he was informed by Plaintiff's step-daughter that the Plaintiff had slashed the tires of her vehicle and fled the scene. (D.E. #32, Attach. 2, pg. 2). She also informed Officer Abreu that the Plaintiff was drunk. (D.E. #32, Attach. 1, pg. 14). The Plaintiff eventually returned to the scene of the disturbance and was placed under arrest and handcuffed. (D.E. #32, Attach. 2, pg. 3-4). By his own admission, from the time he was handcuffed to the time he was placed in Officer Abreu's patrol vehicle, none of the officers attempted to punch him, throw him to the ground, or otherwise use force against him. (D.E. #32, Attach. 1, pg. 6-7). His only complaint was that he wanted his handcuffs loosened. (D.E. #32, Attach. 1, pg. 5).

After a brief, five-minute car ride, Officer Abreu and the Plaintiff arrived at the Sweetwater Police Station.  (D.E. #32, Attach. 2, pg. 7; D.E. #32, Attach. 1, pg. 9). Once inside, Officer Abreu had to repeatedly push Plaintiff further along into the station. (D.E. #41). Plaintiff kept stopping and turning around to argue with Officer Abreu about his handcuffs. (D.E. #32, Attach. 1, pg. 12). Officer Abreu ordered the Plaintiff to turn away and stand with his back facing Officer Abreu several times but the Plaintiff refused to obey the commands. (D.E. #32, Attach. 2, pg. 10-11). They were the only two people inside the station. (D.E. #32, Attach. 2, pg. 12).

Officer Abreu repeatedly ordered the Plaintiff to back away from him but the Plaintiff kept inching closer, preventing Officer Abreu from being able to respond to calls coming into the station. (D.E. #32, Attach. 2, pg. 12-13). Video footage from the station clearly shows the Plaintiff make an approach toward Officer Abreu. (D.E. #41). Officer Abreu, fearing for his safety, then directed Plaintiff to the ground (D.E. #32, Attach. 2, pg. 16-17; D.E. #32, Attach. 1, pg. 12; D.E. 41). During the takedown, the Plaintiff's head accidentally struck a chair that happened to be behind Officer Abreu, resulting in a minor cut above one eye. (D.E. #32, Attach. 2, pg. 14). Officer Abreu then called Officer Parra to the station as backup while the Plaintiff remained on the ground. (D.E. #32, Attach. 2, pg. 14). Upon arrival, Officer Parra took the Plaintiff to a holding cell while waiting for fire

4

rescue to respond to treat the cut to his eye. (D.E. #32, Attach. 2, pg. 15).  After fire rescue left the station, Officer Abreu transported the Plaintiff to Ward D of the Dade County Jail, where the Plaintiff received stitches for the cut above his eye. (D.E. #32, Attach. 1, pg. 13-14). The Plaintiff was ultimately found guilty of criminal mischief as a result of his slashing the tires of his step-daughter's vehicle. (D.E. #32, Attach. 1, pg. 15).

III.    *Standard of Review*

A district court's denial of qualified immunity on summary judgment is reviewed *de novo*. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 fn. 7 (11th Cir. 2002); *Adkins*, 488 F.3d at 1327; *see also Valdes*, 450 F.3d at 1235; *Cook*, 414 F.3d at 1315.

## SUMMARY OF THE ARGUMENT

Qualified immunity is appropriate because there is no case law that clearly establishes the unconstitutionality of the force used by Officer Abreu. Many decisions of this Court and various district courts within the Eleventh Circuit, have authorized an officer's use of force when faced with a handcuffed arrestee that continues to resist arrest by failing to comply with officer commands. Another officer in Officer Abreu's circumstances would have reasonably believed he was authorized to utilize a takedown measure to subdue a noncompliant, intoxicated arrestee while alone in the station with the arrestee. Such a use of force is *de minimis* and therefore does not amount to a constitutional violation as a matter of law.

Even if Officer Abreu's actions violated the Plaintiff's constitutional right, that right is far from clearly established. Violation of a clearly established constitutional right required conduct that clearly crosses a bright line between reasonable and unreasonable conduct. Based on extensive case law that has found force used on a handcuffed arrestee to be *de minimis* and reasonable, as well as the extreme nature of those cases that have found a constitutional violation, it is not clear that Officer Abreu's conduct amounts to a constitutional violation. Qualified immunity should therefore shield him from liability.

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN DENYING SUMMARY JUDGMENT BECAUSE ABREU DID NOT VIOLATE A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT

The District Court erred in denying summary judgment to Officer Abreu because the record evidence does not establish that the force he used was clearly and objectively unreasonable under the circumstances. The doctrine of qualified immunity allows public officials to carry out discretionary duties without the chilling fear of personal liability or harassment of litigation. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). It thus protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

An officer is entitled to qualified immunity while performing discretionary functions when his conduct does not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th Cir. 1993) *modified,* 14 F.3d 583 (11th Cir. 1994) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Because the doctrine of qualified immunity protects government officials from suit, rather than just from liability, "[t]he erroneous denial of qualified immunity on summary judgment significantly undercuts the purposes behind qualified immunity and is

7

harmful even if the defendants, in their individual capacities, ultimately prevail at trial." *Id*. at 1556-57.

Although the Fourth Amendment guarantees the right to be free from the use of excessive force during the course of an arrest, "not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates the Fourth Amendment." *Saucier v. Katz*, 533 U.S. 194, 209 (2001). The Plaintiff bears the burden of proving that, when Officer Abreu acted, the law established the contours of the right so clearly that a reasonable official would have understood his acts were unlawful. *Post*, 7 F.3d at 1557 (citing *Anderson*, 483 U.S. at 640). Meeting this burden requires reliance on more than "general, conclusory allegations or broad legal truisms" because "[t]he line between lawful and unlawful conduct is often vague" and the clearly established standard "demands that a bright line be crossed." *Id*. (citing *Harlow,* 457 U.S. 800; *Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir. 1989)) (internal quotations omitted). "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id*. (citing *Dartland v. Metropolitan Dade County,* 866 F.2d 1321, 1323 (11th Cir. 1989)).

Summary judgment typically requires the courts to view the evidence in a light most favorable to the non-moving party however, for excessive force claims, the courts must also consider the arrestee's conduct from the perspective of a

reasonable officer at the scene. *Zivojinovich v. Barner*, 525 F.3d 1059, 1073 (11th Cir. 2008); *see also J.B. ex rel. Brown v. Amerson*, 519 Fed. Appx. 613, 619 (11th Cir. 2013) *cert. denied,* 14-7066, 2015 WL 731967 (U.S. 2015). In determining whether an officer's conduct was objectively reasonable for qualified immunity purposes, courts must make an "allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

### A.    *No Constitutional Violation Occurred Because the Force Used was De minimis and Reasonable Under the Circumstances*

The District Court erred in its reliance solely on the *Hadley v. Gutierrez* line of cases holding that "a handcuffed, non-resisting defendant's right to be free from excessive force" is clearly established. 526 F.3d 1324, 1333 (11th Cir. 2008); *Saunders v. Duke*, 766 F.3d 1262, 1268 (11th Cir. 2014); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000); *see also* (D.E. #48, pg. 4, n. 4). Its reasoning fails to take into consideration the fact that even at the summary judgment stage, the facts must also be viewed from the perspective of a reasonable officer at the scene. *Zivojinovich*, 525 F.3d at 1073; *J.B. ex rel. Brown*, 519 Fed. Appx. at 619. Use of force is contrary to the Fourth Amendment only if it is excessive under objective standards of reasonableness. *Graham*, 490 U.S. at 396. "The right to make an arrest or investigatory stop necessarily carries with it the right to some degree of

9

physical coercion or threat thereof to effect it." *Id*.; *see also Nolin v. Isbell*, 207 F.3d 1253, 1257-58 (11th Cir. 2000). Any officer perceiving the subject to be resisting "would believe that this level of force is necessary in the situation at hand." *William v. Loughnan*, 261 F.3d 1178, 1186 (11th Cir. 2001). The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. The use of *de minimis* force to subdue an uncooperative suspect does not support a claim for excessive force. *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003).

Based on the information provided to him, Officer Abreu believed that Plaintiff had drunkenly slashed the tires of his step-daughter's vehicle. (D.E. #32, Attach. 1, pg. 14). Officer Abreu further testified that the Plaintiff was combative and argumentative from the moment Officer Abreu attempted to place him in the patrol vehicle to the moment Officer Abreu eventually directed him to the ground. (D.E. #32, Attach. 2, pg. 5-19). Although Plaintiff has submitted an affidavit refuting Officer Abreu's testimony that he was combative, the unbiased video evidence does not lend credibility to his claims. *Cf.* (D.E. #41) *with* (D.E. #43, Attach. 2). Officer Abreu repeatedly has to force Plaintiff to keep moving inside the police station as he keeps turning around to speak to Abreu. (D.E. #41). The

video footage supports Abreu's version of events; that he was alone in the police station with a subject that refused to cooperate with his requests. (D.E. #41). A reasonable officer in the same circumstances would believe he was justified in using *de minimis* force to subdue an uncooperative suspect. *Durruthy*, 351 F.3d at 1094.[1]

Several decisions of this Court have likewise held that more extreme uses of force against a handcuffed suspect were merely *de minimis* under similar circumstances. The force used by Abreu in this case is virtually indistinguishable from the level of force used in prior cases against a handcuffed suspect that this Court has found to be constitutional. *See e.g.*, *J.B. ex rel. Brown*, 519 Fed. Appx. at 619; *McCall v. Crosthwait*, 336 Fed. Appx. 871, 873 (11th Cir. 2009); *Zivojinovich*, 525 F.3d at 1073; *Buckley v. Haddock*, 292 Fed. Appx. 791, 794 (11th Cir. 2008); *Vineyard v. Wilson*, 311 F.3d 1340, 1348-49, fn. 13 (11th Cir. 2002); *Gold v. City of Miami*, 121 F.3d 1442, 1146-47 (11th Cir. 1997); *Post*, 7 F.3d at 1559. In some cases, the arrestee offered even less resistance, if any at all, than the Plaintiff in this case. *See id*. Moreover, the fact that minor medical treatment may be necessary to treat an injury caused by the use of *de minimis* force

---

[1] Plaintiff's complaint that his handcuffs were too tight amounts to *de minimis* force as a matter of law. *Gold v. City of Miami*, 121 F.3d 1442, 1146-47 (11th Cir. 1997). As the District Court held in its order granting Officer Abreu's motion to dismiss Plaintiff's false arrest claim, Officer Abreu had probable cause to arrest the Plaintiff. (D.E. #26). The right to make an arrest necessarily carries with it the right to use some force to effectuate the arrest. *Durruthy*, 351 F.3d at 1094.

11

does not raise the use of force to the level of a constitutional violation. *Jones v. City of Dothan, Ala.*, 121 F.3d 1456, 1460 (11th Cir. 1997) (holding that use of force and injury were minor in nature despite the fact that arrestee had to seek medical treatment several days after his arrest for knee pain).

In *J.B. ex rel. Brown*, this Court found that an officer used objectively reasonable force when he placed a fourteen-year-old handcuffed arrestee in a twenty (20) second chokehold because it was objectively reasonable for the officer to believe the arrestee was going to spit at him. 519 Fed. Appx. at 619. There was conflicting testimony from the officer and the arrestee regarding the events leading up to the chokehold. *Id* at 614-16. However, much like in the instant case, there was video footage without audio showing the arrestee turn his face and body away from the officer before the officer abruptly turned him back around and stood over him applying the chokehold. *Id*. at 615. Importantly, this Court's holding noted that, despite the fact that summary judgment requires the facts be viewed in a light most favorable to the non-moving party, the video footage was the most relevant evidence. *Id*. at 617. Based on the circumstances leading up to the chokehold, this Court concluded that the officer's conduct was reasonable and that the video did not create a material issue of fact. *Id*. at 619.

In *Vineyard v. Wilson*, this Court held that an officer used mere *de minimis* force when he dragged a suspect out of his vehicle by her hair, arm or shirt and

into the police station while she was still handcuffed. 311 F.3d 1340, 1348-49, fn. 13 (11th Cir. 2002). The arrestee admitted to "exchanging verbal insults" with the officer but never physically resisted arrest. *Id*. at 1342-44. In *McCall v. Crosthwait*, this Court similarly held that no constitutional violation occurred because an officer used only *de minimis* force in shoving a handcuffed arrestee out of an elevator at the police station, causing him to strike a steel door and Plexiglas window. 336 Fed. Appx. 871, 873 (11th Cir. 2009). There was no apparent reason for the shove nor any mention that the arrestee had offered any resistance to the officer in refusing to exit the elevator. *Id*.

In *Zivojinovich v. Barner*, this Court held that an officer acted in an objectively reasonable manner when repeatedly using their Tasers on a handcuffed suspect. 525 F.3d at 1073. The arrestee's nose was broken after being punched in the face by two separate officers due to his continued interference their attempt to arrest his son. *Id*. at 1064. After he was handcuffed, he continued to verbally provoke the arresting officers and, due to his broken nose, was spraying blood in their direction when he spoke. *Id*. at 1065. Although the arrestee testified that it was unintentional and summary judgment requires that the facts be viewed in a light most favorable to the non-moving party, this Court nonetheless held that it must view his actions as intentional because it would appear that way to a reasonable officer at the scene. *Id*. at 1073. Therefore, the officers' use of their

13

Tasers after the arrestee was already handcuffed did not amount to a constitutional violation. *Id.*

Likewise, in *Buckley v. Haddock*, this Court found no constitutional violation occurred as a result of an officer using his Taser on a handcuffed arrestee three times. 292 Fed. Appx. 791, 794 (11th Cir. 2008). The arrestee repeatedly refused to comply with the officer's commands to stand up and move away from the side of the road, resulting in a Taser deployment each time he failed to comply. *Id.* at 792-93. In holding that the officer's use of force was reasonable, this Court also noted that the officer was by himself at the scene and confronted with a noncompliant arrestee that, despite being handcuffed was not completely secured. *Id.* at 795.

This Court's precedents highlight the error in the District Court's ruling and its failure consider the video evidence and minor nature of the Plaintiff's injuries. *See J.B. ex rel. Brown*, 519 Fed. Appx. at 617; *Jones*, 121 F.3d at 1460. It is undisputed that Officer Abreu was alone with the Plaintiff in the station at the time this incident occurred. (D.E. #32, Attach. 2, pg. 12). He reasonably believed that Plaintiff was intoxicated based on the information provided to him by the Plaintiff's step-daughter. (D.E. #32, Attach. 1, pg. 14). The incontrovertible video evidence depicts Plaintiff's resistance to Officer Abreu's attempts to move him along into the station, as well as his approach toward Officer Abreu. (D.E. #41).

Under these circumstances, it was reasonable for Officer Abreu to use force to subdue the Plaintiff to prevent further resistance, or even escape, because the Plaintiff was not fully secured and Officer Abreu had no backup. *See e.g.*, *J.B. ex rel. Brown*, 519 Fed. Appx. at 619; *McCall*, 336 Fed. Appx. at 873; *Zivojinovich*, 525 F.3d at 1073; *Buckley*, 292 Fed. Appx. at 794; *Vineyard*, 311 F.3d at 1348-49, fn. 13; *Jones*, 121 F.3d at 1460. As such, the District Court's decision should be reversed because no constitutional violation occurred.

> **B.** **The Law Was Not Clearly Established to Provide Fair Warning That Abreu's Conduct Amounts to a Fourth Amendment Violation Under the Circumstances**

In the event that Officer Abreu's actions amounted to a violation of Plaintiff's constitutional rights, he is still entitled to qualified immunity because the right is far from clearly established. The Plaintiff has failed to meet his burden of proving that the law established the contours of the right to be free from excessive force so clearly that a reasonable officer would have understood Officer Abreu's actions were unlawful. *Post*, 7 F.3d at 1557 (citing *Anderson*, 483 U.S. at 640). Meeting this burden requires reliance on more than the "general, conclusory allegations or broad legal truisms" cited by the District Court. *Cf. Post*, 7 F.3d at 1557 *with* D.E. #48, pg. 4, n. 4. Because "[t]he line between lawful and unlawful conduct is often vague", the clearly established standard "demands that a bright line be crossed." *Post*, 7 F.3d at 1557 (citing *Harlow*, 457 U.S. 800; *Barts*, 865

15

F.2d at 1190) (internal quotations omitted). "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id*. (citing *Dartland,* 866 F.2d at 1323).

Based upon both this Court's precedent and its interpretation by the lower courts, Officer Abreu's conduct did not cross the "bright line" between reasonable and unreasonable, as required to establish a constitutional violation. *See* Section I.A., *supra*; *see also Post*, 7 F.3d at 1559 (granting qualified immunity on arrestee's excessive force claim because shoving a handcuffed arrestee into a wall, while unnecessary, was not clearly unlawful); *Vilceus v. City of W. Palm Beach*, 2009 WL 2242604, at *4 (S.D. Fla. 2009) (shoving a handcuffed arrestee so hard he nearly fell over a chair was not clearly unlawful); *Whittington v. Town of Surfside*, 490 F. Supp. 2d 1239, 1254 (S.D. Fla. 2007) (officers used *de minimis* force in removing an arrestee from a bus so forcefully that he was thrown to the ground, despite the need for medical treatment, because they did not punch, kick, use a Taser, pepper spray, or other weapon on the arrestee); *Grant v. Lucas*, 2009 WL 3857441 at *2 (M.D. Ala. 2009) (officers used *de minimis* when pushing and elbowing a handcuffed arrestee in the chest); *Crutcher v. Athens Police Dept.*, 2014 WL 5521944 at *6 (N.D. Ala. 2014) (use of a chokehold to subdue a handcuffed arrestee that caused arrestee to momentarily lose consciousness was *de minimis*); *Smith v. City of Atlanta*, 2009 WL 2589633 at *8 (N.D. Ga. 2009)

16

(distinguishing the *Hadley* line of cases regarding fully subdued arrestees and holding that officer was justified in using force to take arrestee to the ground because video depicted handcuffed arrestee offering some resistance, though not as much as claimed by the officer nor as little claimed by the arrestee); *Blandin v. County Of Charlotte*, 2010 WL 258808 at *2 (M.D. Fla. 2010) (dismissing arrestee's excessive force claim because officers acted in an objectively reasonable manner in slamming arrestee to the ground, handcuffing him, then pepper spraying and striking him repeatedly when he failed to comply with further commands).

Much like *Smith v. City of Atlanta*, this case is readily distinguishable from the *Hadley* line of cases relied upon by the District Court below because this case, as supported by video evidence, does not involve a fully compliant arrestee nor did Officer Abreu use a gratuitous amount of force causing severe injuries.[2] (*See* D.E. #41). In *Hadley*, the arresting officer punched a fully compliant, non-resisting arrestee in the stomach for no apparent reason other than malice. *Cf. Smith*, 2009 WL 2589633 at *8 *with* 526 F.3d 1324. In *Saunders v. Duke*, the police slammed a non-resisting suspect's head into the ground so hard the suspect suffered serious injuries to his jaw, teeth, and eardrum, as well as burns to his face caused by hot

---

[2] Verbal conduct can even be so disruptive to the execution of an officer's lawful duties that it amounts to non-violent resistance under Florida law, thus authorizing an officer to use force to effectuate an arrest. *Sullivan v. City of Pembroke Pines*, 161 Fed. Appx. 906, 909 (11th Cir. 2006) (citing Fla. Stat. § 843.02).

pavement. *Cf. Smith*, 2009 WL 2589633 at *8 *with* 2014 WL 4403045. Finally, in *Slicker v. Jackson*, a civilian, despite immediately complying with the officers' request to leave the police station, was followed outside, placed under arrest, and lost consciousness after his head was slammed into the ground. *Cf. Smith*, 2009 WL 2589633 at *8 *with* 215 F.3d 1225. Unlike those cases, Officer Abreu was faced with an arrestee that was refusing to fully comply with his requests while alone with the arrestee at the police station. (D.E. #32, Attach. 2, pg. 5-19; D.E. #41). He utilized a standard takedown technique to subdue the Plaintiff with the unintended result that Plaintiff's head struck a nearby chair. (D.E. #32, Attach. 2, pg. 14; D.E. #41).

The use of force in question in *Hadley*, *Saunders*, and *Slicker* were all much more severe than the force at issue in this case. Officer Abreu's use of force, though not necessarily identical, is much more similar to the force used in many of the cases that have either found no constitutional violation or granted qualified immunity. *See e.g.*, *J.B. ex rel. Brown*, 519 Fed. Appx. at 619; *McCall*, 336 Fed. Appx. at 873; *Zivojinovich*, 525 F.3d at 1073; *Buckley*, 292 Fed. Appx. at 794; *Vineyard*, 311 F.3d at 1348-49, fn. 13; *Jones*, 121 F.3d at 1460; *Post*, 7 F.3d at 1559; *Vilceus*, 2009 WL 2242604 at *4; *Whittington*, 490 F. Supp. 2d at 1254; *Grant*, 2009 WL 3857441 at *2; *Crutcher*, 2014 WL 5521944 at *6; *Smith*, 2009 WL 2589633 at *8; *Blandin*, 2010 WL 258808 at *2. When a suspect continues to

18

resist an officer's commands, even after being placed in handcuffs, the officer is authorized to use some level of force to induce compliance. *See Buckley*, 292 Fed. Appx. at 794.

Where there is no factually similar case that would place Officer Abreu on notice that his actions violated the Plaintiff's constitutional rights, qualified immunity should be granted. *See Hope v. Pelzer*, 536 U.S. 730 (2002). The current case law fails to establish that Officer Abreu's actions clearly crossed a definitive line between reasonable and unreasonable. *Post*, 7 F.3d at 1557 (citing *Harlow*, 457 U.S. 800; *Barts*, 865 F.2d at 1190). Because the case law "has not staked out a bright line" between force that is reasonable and force that is unconstitutional when a suspect is handcuffed, qualified immunity must protect Officer Abreu. *Id.* (citing *Dartland*, 866 F.2d at 1323).

## CONCLUSION

The Appellant, PAUL ABREU, is entitled to qualified immunity because his actions did not amount to a clearly established violation of Plaintiff's right to be free from excessive force under the Fourth Amendment.

WHEREFORE, based on the foregoing reasons, Appellant, PAUL ABREU, respectfully asserts that the District Court erred in denying his Motion for Summary Judgment and requests this Honorable Court to reverse the Order denying Summary Judgment.

## CERTIFICATE OF COMPLIANCE

This Answer Brief complies with the type-volume limitation of Fed. R. App.

P. 32(a)(7)(B) because this brief contains 4,428 words, excluding parts of the brief

exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Furthermore, this Answer Brief complies with the typeface requirements of

Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P.

32(a)(6). This brief has been prepared in a monospaced typeface using Microsoft

Word 2007 in Times New Roman and 14 point font.

Dated: _3/11/15_

Oscar E. Marrero
Lourdes Espino Wydler
*Attorneys for Appellant*

20

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of March 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and conventionally filed the foregoing document via Federal Express. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF and via Federal Express.

MARRERO & WYDLER
Attorneys for Appellant, Paul Abreu
Douglas Centre, PH-4
2600 Douglas Road
Coral Gables, FL 33134
(305) 446-5528
(305) 446-0995 (fax)

BY _____
OSCAR E. MARRERO
F.B.: 372714
oem@marrerolegal.com
LOURDES E. WYDLER
F.B.: 719811
lew@marrerolegal.com

21

## <u>SERVICE LIST</u>
## Case No.: 14-15393-F

**Alan Greenstein, Esquire**
**LAW OFFICES OF CHAVEZ & DE LEON, P.A.**
**5975 Sunset Drive, Suite 605**
**South Miami, FL 33143.**
**(305) 740-5347**
**(305) 740-5348 (fax)**
**F.B. #237817**
**agreenstein@chavez-deleon.com**
*Counsel for Appellee*

**Jay M. Levy, Esquire**
**Jay M. Levy P.A.**
**9150 S. Dadeland Blvd., Suite 1010**
**Miami, FL 33156**
**(305) 670-8100**
**(305) 670-4827 (fax)**
**jay@jaylevylaw.com**
*Counsel for Appellee*

**Michael R. Piper, Esquire**
**F.B.N.:  710105**
**piper@jambg.com**
**Williams@jambg.com**
**Blouin@jambg.com**
**Johnson Anselmo Murdoch Burke, Piper & Hochman, P.A.**
**2455 E. Sunrise Blvd., Suite 1000**
**Fort Lauderdale, Florida 33304**
**(954) 463-0100**
**(954) 463-2444 fax**
*Counsel for Defendant City of Sweetwater*